Estrada v. Becker Wait until we have the corporate needs to settle down first. All right, Mr. Lopez. Good morning, Your Honors. Berth Lopez on behalf of the student appellates, and may it please the Court. Georgia requires a verification of lawful presence as a condition for students wishing to obtain its top colleges and universities, and defines lawful presence in the United States in a manner that is inconsistent with the federal definition. It does so to exclude a group of politically unpopular and vulnerable students who hold deferred action pursuant to DACA from its flagship schools. The district court committed two groups of errors in denying and dismissing students' claim. First, the court erroneously concluded that Georgia's state-specific immigrant classification of lawfully present in the United States was not preempted by federal law. Secondly, the court failed to recognize that the students here are similarly situated with respect to lawful presence as other individuals who the state admits to its flagship schools. Let's talk about preemption first. You claim that or think that the DACA memo from the Department of Homeland Security carries preemptive effect? Your Honor, the preemptive effect of deferred action comes from the inherent authority of the executive, as recognized by this court in its Gene V. Nelson decision. Certainly, 1103, which is the most extensive and the most important part of that delegation, gives the Secretary of Homeland Security the authority to carry out such acts as deems necessary to carry out her responsibility in enforcing the immigration laws. So the answer is yes, it has preemptive effect? Yes, Your Honor, it has preemptive effect to the extent that the INA and the inherent power of the executive is what provides the lawful presence that flows from DACA. Tell me why it is that you believe that that memorandum establishes that your clients are lawfully in the United States. Isn't it deferred prosecution, for lack of a better term, that the government is not going to exercise its discretion to initiate removal proceedings against individuals in a certain category? Your Honor, lawful presence, or rather deferred action, has been recognized as a historical practice by the executive that grants deferred action to individuals who would otherwise be subject to removal. The Supreme Court in the AADC, or the Reno v. Arab-American Anti-Discrimination Matter, recognized this historical presence of authorized stay in the United States. Nobody is disputing any of that. I certainly am not. The question is whether or not that deferred action translates into your clients being lawfully in the United States. It does, Your Honor. Deferred action has been recognized to confer authorized stay or lawful presence by this court in Glar, which concluded that deferred action is a period of authorized stay in the United States. No, what we said in the Georgia Latino Alliance was that a person classified under deferred action status remains permissibly in the United States. But that's different than saying that the person is lawfully in the United States for immigration purposes. You don't see a difference between those two things? Your Honor, lawful presence is, as defined by the federal immigration law at 1182, for example, is a period of authorized stay that is authorized by the executive. I know, but that section only deals with ineligibility for visas. The definition you rely on starts with the words, for purposes of this paragraph. We're not talking about ineligibility for visas in this case. Yes, Your Honor, but as the appellees concede in their briefs and as demonstrated by the collateral effects of that grant of lawful presence, lawful presence has further meaning that goes beyond admissibility. For example, individuals who have lawful presence pursuant to a grant of deferred action also have the ability to obtain work authorization under CFR 274A. Notably, Your Honor, with respect to that grant of authorized presence, the ability to work in the United States is itself evidence of lawful presence because under 8 U.S.C. 1324A, only lawfully present non-citizens are authorized to work. Similarly, Your Honor, the state of Georgia itself recognizes that deferred action holders have authorized stay in their own driver's license law at 40-5-1. And so Georgia's state-specific definition of lawful presence conflicts with… Mr. Lopez, let me ask you, is it your position, your client's position that the DACA memo confers some new additional immigration status that they didn't have before the memo? No, Your Honor. The DACA memo does not confer an immigration status, which is a distinct classification under the INA. What the DACA memo does is to channel agency discretion that has existed for decades, as recognized by the Supreme Court in the Reno case and by various courts, that the agency can give a temporary reprieve of presence to a certain group of individuals. So it doesn't change the immigration status? It does not change the immigration status of these individuals. Just like it was back in the Marietto days when the Attorney General paroled people into the United States? Yes, Your Honor. The same idea? Yes, Your Honor. And so it is a very… They were paroled and they were staying there until the process was issued? Yes, Your Honor. They were paroled into the United States as an act of the federal executive's express authority. I understand that, but the DACA people are like that, is what I'm trying to say. Absolutely, Your Honor. Absolutely. They're like they were paroled in? And so what Georgia has done… Let me ask this. The name itself, Deferred Action of Childhood Arrivals, Deferred Action, Deferred Action  What does it postpone? It postpones… Removal. …removability. Okay. And what removability suggests that they're here without permission. If they can be removed, they're removed because they are not lawfully here. I mean, doesn't that seem to follow? Yes, Your Honor, but it gets to the point of the classification that the state of Georgia itself has latched onto in its policy 4.16. They don't say lawful status. They say lawful presence very explicitly. And what lawful presence… So this is an argument about Georgia State and it has nothing whatever to do with DACA, is your argument. Absolutely, Your Honor. There is no… If Georgia State said we will take illegal aliens who are here without any presence authorized or anything else, they're entitled to go to school. Your Honor, I believe… Am I overstating it? That is, I believe, a decision that was within the power of the state's… If the state may say, we're going to admit as a student anybody, whether they're properly admitted to the United States, whether they're removable, whether they don't have a right to asylum, whatever the case, we'll let them go to school. Yes, Your Honor. Okay. Your Honor, this case is really… So DACA really doesn't have anything to do with it, does it? Absolutely. And neither the district court nor appellees challenged the validity of DACA. And as we stand here today… If DACA went away, if the DACA deferred action memo went away, would you still have the same claims? Yes, Your Honor. First and foremost… Then DACA doesn't mean anything. No. It either does mean something or it doesn't mean something. And that doesn't mean you're right or you're wrong. And it doesn't predict what we're going to end up doing. But you either have to… It seems to me I speak only for myself, not for my colleagues. That's why I asked you at first whether you believed that the DACA deferred action memo carried preemptive effect in and of itself. If you're telling me that your claims would be exactly the same, even if that memo were fully repealed tomorrow, then the DACA memo is out of the case. And your clients, regardless of what the government said about them, would be able to mount the same claims that they have today. What am I missing? Your Honor, first and foremost, if the DACA memo were to go away tomorrow, there would still be a claim because our clients haven't been harmed to this point. To the extent that the executive repeals DACA at some point down the line. That would be a… No, no, no. You're right about that. But that would be a different claim than the ones you're bringing here. If there was no DACA memo and the DACA memo were repealed immediately tomorrow, would you have a preemption claim? We would still have a preemption claim with respect… Based on what? With respect to deferred action holders that the state of Georgia does not admit to. There's no deferred action anymore because the memo's gone in my hypothetical. Deferred action is an umbrella term. DACA is just a component of deferred action. The government wipes out all deferred action and says, we'll get to you when we can get to you. Do you have a preemption claim? Your Honor, the Supreme Court has noted the historical use of deferred action. I know, and nobody's questioning that. I'm just… If the government decided tomorrow, I mean, I think it would be a horrible thing given the consequences that would ensue, but if the government said tomorrow, no deferred action for anybody, we're going to move as quickly and expeditiously as we can. And if you're not here with legal status, at some point we'll get to you. It may take us five years, it may take us eight years, but we're going to get to you. You still have a preemption claim? At that point, Your Honor, we would consider whether or not there was a classification of immigration here. And so… That's a different… That's a different issue. Do you have a preemption claim? You have two claims here. You have a preemption claim and you have an equal protection claim, right? We haven't even gotten to equal protection claim yet. Do you still have a preemption claim if deferred action status is wiped out completely tomorrow? If there was no such thing as deferred action, yes, tomorrow we maintain that we would still have a cause of action for the harm that was endured prior to that. Going forward… You have to put a legal theory on the harm, Mr. Lopez. No one doubts that your clients are harmed. Why don't you think about it before a rebuttal? Your Honor, very quickly with respect to the classification of immigration, what the State of Georgia has done is to redefine lawful presence to mean some combination of lawful status and student aid eligibility, which is a preempted classification of immigration under Dukakis. Mr. Pinson. Thank you, Your Honor. May it please the Court. This Court should affirm the district court's dismissal of both the preemption claim and the equal protection claim in this case. Plaintiffs have failed to state a preemption claim because they haven't identified the most fundamental element of that claim, which is a clear and manifest congressional purpose that these admissions policies conflict with. Congress hasn't shown a clear purpose to guarantee deferred action recipients eligibility for admissions to all public universities. Now this Court didn't address the equal protection. They wouldn't have to go that far if Georgia, for example, and I'm not saying this is the case, but if Georgia, for example, tried to come up with a different definition of lawful status, they wouldn't have to show what you just said. That would be express preemption. Express preemption based on? If the government said anyone who's here with a green card is unlawfully in the United States, that would be expressly preempted, right? I don't think it would be expressly preempted. I think it would be preempted under this Court's, under the Supreme Court's prior precedence with respect to legal residentiality. Doesn't federal immigration law in the code say that someone who's here with lawful permanent resident status, the so-called green card, is lawfully in the United States? It's absolutely the case, Your Honor. That would be express preemption then. A state has no business trying to come up with a different definition for immigrants than the federal government does. Is that right? Your Honor, that's true. That's not what the state has done here. I know. I said that at the beginning. I said this is not this case. But if there was a different definition that Georgia adopted for lawful status, then you'd have a different issue. If the state of Georgia were trying to change federal immigration classifications for whether someone is lawfully admitted into the country, yes, that's correct. Right. Okay. Right. But here, again, the touchstone is clear and manifest congressional purpose with respect to the preemption claim. And the plaintiffs in this case have not shown that in any way. They cite three separate sort of theories of preemption, regulation of immigration, field preemption, conflict preemption, and none of those things have they shown that clear congressional purpose with respect to alien admissions to universities. Regulations of immigration are limited to regulations that actually regulate immigration, that is, the entrance to and stay in the country and whether that is allowed under federal law. These policies, of course, don't do that. They apply to only three state universities. And there's, I think, no plausible argument that they're forcing anyone out of the state in the way that the contract provision from Alabama did in the United States versus Alabama. There was a mention in one or maybe both briefs that since the time the lawsuit was filed, which universities were included in the Board of Regents definition had changed. Is that correct? That's correct. That there's now a more limited number of universities? That's right, Your Honor. It's now three. It's the University of Georgia, Georgia Tech, and Georgia College and State University. The other two no longer fall under the definition as it's set out. As for field preemption, the plaintiffs have not identified any comprehensive scheme, much less any scheme at all that has to do with admissions of aliens to public universities. And the same goes with respect to conflict preemption. Even if you look to federal law, to the extent that Congress has done anything with respect to aliens and universities, they've shown a purpose consistent with the policy here. In both Prora and IRIRA, and also with respect to federal student aid, Congress has set limits on who is eligible for state or local benefits, who is eligible for in-state tuition, and who is eligible for federal student aid. In all of those cases, deferred action recipients do not fit those categories of aliens who are eligible for those things. So if anything, Congress has shown a purpose consistent with the purpose of, consistent with, and not in conflict with these admissions policies. Going back to something that Judge Gofat mentioned in the appellant's argument, I do want to make clear that this is different from parole. Well, I understand that. Okay. Parole is a status. I just mentioned that because that's old law. Yes, Your Honor. They used to do that a long time ago. Right. Congress cut it out. Congress eliminated it. It did. It did. It now requires parole on a case-by-case basis. Yes, that's out. I just mentioned it because the parolees were present sort of like the DACA people were present. In a sense. Sort of like. In a sense. They don't walk around. Right. I'd also point out that I agree with Judge Jordan and Judge Huck, that DACA does not provide any kind of lawful exemption. It is a reprieve from removal, but deferred action recipients remain removable. They're inadmissible aliens under the INA, not lawfully in the country, who are removable at any time. What do you say about the arguments, and this doesn't go to whether or not regulations can have preemptive effect, but the fact that certain federal regulations seem to speak about the ability to work, the ability to obtain driver's licenses with some connection to lawful status? Your Honor, I'll take those one at a time. Work authorization does not imply any kind of lawful immigration status. To the contrary, Congress has permitted the executive some discretion to decide who is eligible for work authorization, but that's without respect to whether or not they have any kind of lawful status. And indeed, the executive has provided work authorization to certain aliens who have a final order of removal against them. What that shows is that work authorization is authorization to work while present, but it doesn't necessarily authorize any kind of lawful immigration status. I think the same goes for the REAL ID Act. The REAL ID Act says that states must verify that persons have any particular immigration status, and one of those is deferred action, but that in and of itself does not show that deferred action recipients are lawfully in the United States. In addition, neither of those things, even to the extent that Congress has afforded the executive some discretion with respect to those particular benefits, that doesn't show any kind of clear congressional purpose to guarantee or require eligibility for admission to state universities. The Supreme Court has required a much clearer statement of purpose than those sorts of things. Your Honors, equal protection was not addressed in the opening argument. I'm happy to address it if you have any questions. Beyond that, if there are no further questions. We'll take that issue on briefs. All right. The last thing I'd say, Your Honor, is DACA and their argument that DACA, because there's some kind of executive discretion that Congress has afforded through 1103, I think that's a far cry from the indication of clear congressional purpose that you need to show that these policies are somehow preempted. For one thing, again, DACA is about reprieve from removal. The policies do nothing that is in conflict with or that interferes with removal. And for another, that kind of broad discretion in and of itself is not something that provides a clear statement of congressional purpose. If there are no further questions. I think we understand your position. Thank you, Your Honor. Mr. Lopez. Thank you, Your Honor. Very quickly with respect to the question posed by Judge Jordan, if deferred action were to completely disappear tomorrow, then yes, we would not have our preemption claim. Moving on to the— You have to use DACA as a hook in order to make case here. No, because as long as deferred action exists— You need some help. Right. So, absolutely, Your Honor. With respect to Georgia's conflation of status and presence, those are two separate terms under the immigration law. Whether or not the DACA students have status, which cases have recognized is a separate and distinct concept from presence, Georgia's policy speaks in terms of lawful presence. And so, therefore, it is bound to that definition of lawful presence, which is authorized stay in the United States. The court in HECA, which we relied on our briefs in the context of college admissions, found that the state's attempt to exclude illegal undocumented persons from their college program, that that was a regulation of immigration because it sought to narrow the definition of lawful presence to mean some combination of lawful status and or non-immigrant visas. In other words, it narrowed the definition of lawful presence. Similarly, the Ninth Circuit in ADAC held that the state of Arizona's attempt to rank or deny the lawful presence of deferred action holders was a classification of immigration. What was key to that determination was the idea that the state's policy, as Georgia's policy here, necessarily embodies an independent judgment by the state as to the presence, lawful or otherwise, of a certain non-citizen. And we submit that is precisely what Georgia has done here. Could the state of Georgia do this for someone who doesn't have DACA deferred status? Your Honor, if the question is, can the state of Georgia exclude somebody who has authorized presence? No, exactly the same way that it's doing it now. You're allowed admission into some universities, but not some universities which have competitive admission and can't admit everybody who applies. As long as that individual has authorized presence and is a court in ADAC. No, no. My question was different. Your Honor. Could the state of Georgia do this for individuals who are in the United States without DACA status or deferred action? Oh, individuals who are here without illegally, who are unlawfully present in the United States? Yes. Yes, the state of Georgia could exclude unlawfully present individuals, although to the extent that this is a targeted policy, it would raise equal protection concerns. I see my time has expired. I was only asking about the preemption claim. So if they don't have the sort of status that your clients have, the state of Georgia could do this without having its regulation preempted by federal law. Yes, Your Honor. Your Honor, we ask that the decision below be reversed and remanded for further proceedings. I think we have your case. Thank you, gentlemen. We'll be in recess until tomorrow at 9 o'clock.